UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
EDITH M. BUDIK, M.D.,              )
                                   )
            Plaintiff,             )
                                   )
       v.                          )    Civil Action No. 12-1191 (RBW)
                                   )
HOWARD UNIVERSITY HOSPITAL,        )
et al.,                            )
                                   )
            Defendants.            )
_____)

## MEMORANDUM OPINION

The pro se plaintiff, Dr. Edith M. Budik, filed this action against the defendants, Howard University Hospital ("Howard") and Dr. Andre J. Duerinckx, alleging invasion of privacy, fraud, misrepresentation, intentional infliction of emotional distress, and violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a) (2012), and the Age Discrimination in Employment Act ("ADEA") of 1967, 29 U.S.C. §§ 621-634 (2012). See Complaint ("Compl.") ¶¶ 25-32. Currently before the Court are the Defendants' Motion to Dismiss the Complaint ("Defs.' Mot.") and the plaintiff's Motion for a Cease and Desist Order Because of Harassment ("Pl.'s Mot."). Upon careful consideration of the parties' submissions,[1] and for the reasons stated below, the Court must grant the defendants' motion in part and deny the plaintiff's motion.

### I. BACKGROUND

The plaintiff asserts the following facts in support of her allegations against the defendants. The Chair of Howard's Department of Radiology, Dr. Duerinckx, "advertised for

---

[1] In addition to those already identified, the Court considered the following filings in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the Complaint ("Defs.' Mem."); and (2) the Defendants' Opposition to Plaintiff's Motion for Cease and Desist Order ("Defs.' Opp'n").

1

faculty academic positions in [subspecialty] areas of radiology" in 2009, Compl. ¶ 6, and the plaintiff contacted him "regarding the availability of a faculty position" in July 2009, id. ¶ 7. On July 31, 2009, "Dr. Duerinckx invited [the] plaintiff [in] for a formal staff interview for a faculty position in the Department of Radiology." Id. ¶ 8. "During the interview, other staff members" informed the plaintiff "that a number of Caucasian radiologists had been offered a position[,] but none of them had accepted it." Id. ¶ 10. Ultimately, "Dr. Duerinckx offered [the plaintiff] an academic faculty position to specifically fill [subspecialty] areas in radiology." Id. ¶ 9. Thereafter, on August 3, 2009, the "[p]laintiff submitted a[] [Howard] application for appointment to the Medical Staff along with" other paperwork.[2] Id. ¶ 11. Dr. Duerinckx also "instructed [the] plaintiff to obtain temporary privileging while the formal privileging process for a faculty appointment was being conducted so that she could begin work right away." Id. ¶ 12.

On August 17, 2009, the "plaintiff was granted temporary privileging" from that date until December 16, 2009. Id. ¶ 13. "Dr. Duerinckx restricted [the] plaintiff's privileges to backlog work" as opposed to the "subspecialty work [that was] offered and agreed upon by the parties during the interview." Id. "[T]he justification he gave for doing so was that [the] plaintiff would need to become familiar with the workings of the equipment and the Department [of Radiology]." Id. According to the plaintiff, the "duties were not in accord with the privileges requested and approved by the Medical Staff Office (the approving body) and acknowledged by Dr. Duerinckx." Id.

"Dr. Duerinckx instructed [the] plaintiff to submit her weekly time records directly to him on a form he provided with the title 'Bill for Clinical Radiology Services,'" and he further "instructed [her] to check a box on the form that she would be a 1099 employee" and would be

---

[2] Strangely, the plaintiff asserts later in her complaint that Dr. Duerinckx "instructed [her] to submit a [Howard] 'Application for Employment'" on October 11, 2009. Compl. ¶ 18. This difference in timing is immaterial to the resolution of either motion currently before this Court.

2

"paid differently" from other employees. Id. ¶¶ 14-15 (emphasis omitted). On September 22, 2009, he also "instructed [the] plaintiff to submit an employment eligibility verification form for a background identification check. At this time, [the] plaintiff was given a copy of a 'Hire Approval Form' that was dated" August 3, 2009. Id. ¶ 16.

The "plaintiff discussed with Human Resources . . . being paid at irregular intervals with no explanation or apparent reason." Id. She also "spoke directly to Dr. Duerinckx about the aforementioned pay issues as well as other concerns," and he then "instructed [her] that she was not to discuss any payroll or any other issues or to complain about him to Human Resources or to anyone else, ever again." Id. ¶ 17.

The plaintiff asserts that "[b]y [November 25, 2009,] the situation had worsened exponentially" and she "[t]hus[] spoke to the Administrative Assistant to the Chief Executive Officer of [Howard] and the Radiology Department Administrator about a number of concerns." Id. ¶ 19. Those concerns were:

- Misrepresentation of the position offered and the subsequent immediate and continued restriction of [the] plaintiff's privileges and duties[;]
- Patient/personnel safety and non-compliance issues in the Radiology Department . . . [;]
- Disparate discriminatory acts in work assignments and a hostile working environment[; and]
- A discriminatory comment made to [the] plaintiff by Dr. Duerinckx: "<u>We are going to get rid of all the bad African American doctors</u>."

Id. (emphasis in original). She asserts further that on December 8, 2009, "Dr. Duerinckx intended to also restrict [her] duty hours," and so she "spoke to the Chief Medical Officer and the Chair of Internal Medicine" about the reduction as well as about her other concerns. Id. ¶ 20. "On [December 11, 2009,] Dr. Duerinckx presented [the] plaintiff with a letter intended to force her [to either] resign[] or be involuntarily separated." Id. ¶ 21. The "[p]laintiff was effectively terminated . . . [five] days before her temporary

3

privileges would have expired." Id. "Dr. Duerinckx continued to harass [the] plaintiff" subsequent to her separation from Howard by "publish[ing] . . . employment information and post[ing] a photograph of [the] plaintiff on his website, both without her permission or authority." Id. ¶ 23.

"On [December 15, 2009, the] plaintiff filed a complaint with the United States Equal Employment Opportunity Commission [("EEOC")] based on: national origin, race, color, sex, age and retaliation" in which she "listed Dr. Andre Duerinckx[, who is] Caucasian, male, [and] Belgian . . . as the primary respondent." Id. ¶ 22. She received a notice of right to sue from the EEOC on May 8, 2012, which was dated April 30, 2012. Id. ¶ 24; see also id., Attachment ("Attach.") 1 (Dismissal and Notice of Rights) at 1.

The plaintiff instituted this action on July 16, 2012. The defendants have now filed a motion to dismiss, and the plaintiff has filed a motion for a cease and desist order enjoining Dr. Duerinckx from publishing on his website any information about the plaintiff.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Moreover, a plaintiff receives the "benefit of all inferences that can be derived from the facts alleged." Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citation omitted). However, raising a "sheer possibility that a defendant has acted unlawfully" fails to satisfy the facial plausibility

4

requirement. Iqbal, 556 U.S. at 678. Rather, a claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in the complaint, conclusory allegations "are not entitled to the assumption of truth." Id. at 679.

"A pro se complaint," such as the plaintiff's, "'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" Id. (quoting Iqbal, 556 U.S. at 678-79).

### III. ANALYSIS

#### A. The Plaintiff's Title VII Claims

The plaintiff's complaint alleges violations of Title VII based on "[d]isparate discriminatory acts," Compl. ¶ 19; see also id. ¶ 2, "a hostile working environment," id. ¶ 19, and "retaliation," id. ¶ 22; see also id. ¶¶ 2, 26. The defendants argue that the plaintiff's Title VII claims must fail because she has not alleged that similarly situated employees were treated differently, has not adequately pleaded facts from which the Court could infer that she was subject to a hostile work environment, and cannot sustain a retaliation claim because her other allegations of discrimination lack merit. See Defs.' Mem. at 7-9. The plaintiff offers no response to these arguments.

#### 1. Disparate Treatment

Under Title VII, it is an "unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to [her]

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . sex, or national origin." 42 U.S.C. § 2000e-2(a). In order to state a prima facie case of employment discrimination, a plaintiff must show that "'(1) [she] is a member of a protected class; (2) [she] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO, 548 F.3d 137, 144 (D.C. Cir. 2008) (citation omitted). Where a plaintiff seeks an inference of discrimination based on "disparate treatment," the plaintiff must further show that "all of the relevant aspects of her employment situation were 'nearly identical' to those" of the other employees who did not suffer similar adverse employment actions. Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995).

Here, the plaintiff alleges that "a Caucasian co-worker refused to do a procedure because of antiquated equipment and was excused from that task" but that "as an African American, [the plaintiff] was not excused." Compl. ¶ 2. The plaintiff has thus adequately alleged that she is a member of a protected class. See § 2000e-2(a)(1) (prohibiting discrimination on the basis of race). It is less clear that the plaintiff's allegation that she was "not excused" from performing a certain task is sufficient to show that she suffered an adverse employment action. But even if it is sufficient, the plaintiff has failed to establish that the action "gives rise to an inference of discrimination," Royall, 548 F.3d at 144, because she has not pleaded facts that show that "all of the relevant aspects of her employment situation were 'nearly identical,'" Neuren, 43 F.3d at 1514, to those of her former Caucasian co-worker. Specifically, she fails to identify the co-worker's job title, or to allege any facts about the co-worker's experience, seniority, or expertise. Indeed, the only information provided is the co-worker's race. Because the plaintiff has alleged

no facts other than the ambiguous job title of "co-worker," she has failed to state a claim for disparate treatment discrimination, and the Court must therefore dismiss that claim.

**2. Hostile Work Environment**

To state a Title VII claim of a hostile work environment, a plaintiff must demonstrate that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult" that was "'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" Harris v. Forklift Sys., 510 U.S. 17, 21 (1993) (citation omitted). To satisfy this requirement, a plaintiff must show

> 1) that the plaintiff is a member of a protected class; (2) that the plaintiff was subject to unwelcome racial harassment; (3) that the harassment occurred because of h[er] race; [4)] that the harassment affected a term, condition or privilege of h[er] employment; and [5)] that the employer knew or should have known of the harassment, but failed to take any action to prevent the harassment.

Jones v. Billington, 12 F. Supp. 2d 1, 11 (D.D.C. 1997), aff'd, 1998 WL 389101, at *1 (D.C. Cir. 1998). In evaluating the plaintiff's allegations, "the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)). "Except in extreme circumstances, courts have refused to hold that one incident is so severe to constitute a hostile work environment. Even a few isolated incidents of offensive conduct do not amount to actionable harassment." Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (citations omitted).

Here, the plaintiff's conclusory allegations are insufficient to support a hostile work environment claim. Her complaint states that "Dr. Duerinckx created a harassing and hostile environment, [and] set a tone of intimidation and fear." Compl. ¶ 2. Although the complaint

goes on to describe an incident where a "Caucasian co-worker . . . was excused from [a] task, . . . [while the] plaintiff, as an African American, was not excused," id. ¶ 2, and Dr. Duerinckx's comment that "[w]e are going to get rid of all the bad African American doctors," id. ¶ 19, these isolated incidents do not rise to the level required for a showing of a hostile work environment. See, e.g., Barbour v. Browner, 181 F.3d 1342, 1348 (D.C. Cir. 1999) (finding two isolated incidents of workplace harassment insufficient to establish a hostile work environment); Harris v. Wackenhut Servs., Inc., 590 F. Supp. 2d 54, 74-76 (D.D.C. 2008) (holding that three isolated racially charged remarks were insufficiently severe and pervasive to establish a hostile work environment), amended on other grounds by 648 F. Supp. 2d 53 (D.D.C. 2009), aff'd, 419 F. App'x 1, 1-2 (D.C. Cir. 2011); cf. Leftwich v. Gallaudet Univ., 878 F. Supp. 2d 81, 100 (D.D.C. 2012) (holding that the plaintiff's complaint, which recounted eleven specific incidents of racial discrimination and additionally alleged that the plaintiff had been subjected to "discriminatory conduct . . . nearly every day for three years," was sufficient to establish a hostile work environment). And although the complaint further alleges that Dr. Duerinckx "restricted [the] plaintiff's privileges to backlog work," Compl. ¶¶ 13, 19-20, and put the plaintiff on a different payroll schedule from other unidentified employees, id. ¶¶ 14-17, the plaintiff connects neither of these allegations to her status as a member of a protected class and thus has not stated a prima facie case through the assertion of these incidents, Baloch, 550 F.3d at 1201 (holding that courts should look to whether the alleged discriminatory conduct "expressly focused" on the plaintiff's protected class); Jones, 755 F. Supp. 2d at 149. Accordingly, the Court must dismiss the plaintiff's hostile work environment claim.

### 3. Retaliation

Title VII further makes it unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). And "[t]o prove unlawful retaliation, a plaintiff must show: (1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice." McGrath v. Clinton, 666 F.3d 1377, 1380 (D.C. Cir. 2012). In addition to formal EEOC complaints, informal complaints of discrimination are also protected. Richardson v. Gutierrez, 477 F. Supp. 2d 22, 27 (D.D.C. 2007). However, this Circuit has made clear that "'an employee seeking the protection of the opposition clause [must] demonstrate a good faith, reasonable belief that the challenged practice violates Title VII.'" George v. Leavitt, 407 F.3d 405, 417 (D.C. Cir. 2005) (alteration in original) (citation omitted). Where "the incidents of which [the plaintiff] complain[s] [cannot] reasonably be thought to constitute . . . . opposition to a practice made . . . unlawful by Title VII within the meaning of § 2000e-3(a)," the plaintiff's retaliation claim will fail. Id. (citations and quotation marks omitted).

The plaintiff here has stated a prima facie case of retaliation. In particular, her complaint states that, on November 25, 2009, she "spoke to the Administrative Assistant to the Chief Executive Officer of [Howard] and the Radiology Department Administrator about a number of concerns[,] [including] [d]isparate discriminatory acts in work assignments and a hostile working environment [and] [a] discriminatory comment made to [the] plaintiff by Dr. Duerinckx [that] '[w]e are going to get rid of all the bad African American doctors.'" Compl. ¶ 19. Her

complaint alleges further that she was terminated from Howard on December 11, 2009. Id. ¶ 21. There is no reason for the Court to conclude that the plaintiff's allegations of discriminatory conduct were made in bad faith, and it is undisputable that the plaintiff's allegations concerned what she perceived to be racial discrimination in the workplace, in other words, practices made unlawful by Title VII. Finally, the plaintiff's complaint alleges that "Dr. Duerinckx wrongfully terminated [her] in retaliation for complaining of unlawful discrimination," among other matters. Id. ¶ 2. Termination from employment is undoubtedly an adverse employment action. Broderick v. Donaldson, 437 F.3d 1226, 1233 (D.C. Cir. 2006).

The defendants argue that the plaintiff has failed to state a prima facie claim of retaliation because "the alleged discriminatory treatment [the plaintiff] claims she reported to [Howard] administrators is the same conduct that . . . does not amount to actionable discrimination ab initio." Defs.' Mem. at 9. They base this argument on an incorrect reading of Beyene v. Hilton Hotels Corp., 815 F. Supp. 2d 235 (D.D.C. 2011), and Broderick v. Donaldson. In Beyene, another member of this Court held that a plaintiff could not sustain a cause of action for Title VII retaliation because the plaintiff had not "complained of some unlawful discrimination based on his membership in a protected class." Beyene, 815 F. Supp. 2d at 247 (emphasis added). Specifically, although the plaintiff argued that he had been retaliated against because he had complained to his employer about certain issues, "there [was] no evidence . . . that this complaint referred to his religion or national origin." Id. Indeed, there was evidence that the plaintiff believed that his employer had retaliated against him because of a report that he wrote, and not because he was a member of a protected class. Id. And in Broderick, the Circuit merely observed that because a particular memorandum that the plaintiff sent to her employer and to the Equal Employment Opportunity Office "did not allege . . . that she was currently being

10

discriminated against or that she was being retaliated against for her previous lawsuit" but instead "stat[ed] only that she found 'being treated as a staff attorney after nineteen years' working for [her employer] to be 'embar[r]assing, humiliating and downright insulting,'" it was unclear whether sending the memorandum could function as a protected activity for the purpose of sustaining a Title VII retaliation claim. 437 F.3d at 1232. In other words, and contrary to the defendants' assertions, <u>Beyene</u> and <u>Broderick</u> stand for the proposition that a plaintiff's complaint to her employer, the EEOC, or another appropriate person or entity must <u>allege</u> discrimination <u>on the basis of membership in a protected class</u> in order for that complaint to in turn constitute the type of statutorily protected activity contemplated by Title VII's retaliation provision. The cases do not support the proposition that a plaintiff's allegations of discrimination must ultimately be meritorious in order for the plaintiff to allege that her employer retaliated against her for making the allegations. Indeed, as the Supreme Court has stated,

> [t]he antidiscrimination provision [of Title VII] seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status[, while] [t]he antiretaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [Title VII's] basic guarantees. The substantive provision seeks to prevent injury to individuals based on who they are, <u>i.e.</u>, their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, <u>i.e.</u>, their conduct.

<u>Burlington Northern & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 63 (2006) (citation omitted).

Once a plaintiff establishes a <u>prima facie</u> case of retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. <u>Pardo-Kronemann v. Donovan</u>, 601 F.3d 599, 603 (D.C. Cir. 2010) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973)). However, the defendants have failed entirely to offer an explanation for

11

terminating the plaintiff from her position with Howard. Accordingly, the Court cannot dismiss the plaintiff's Title VII retaliation claim.

**B.      The Plaintiff's ADEA Claim**

The defendants argue that the plaintiff's ADEA claim must fail because "she has pleaded no facts to establish the required element that she is in a protected class." Defs.' Mem. at 10. The plaintiff offers no response.

The "two essential elements" of an employment discrimination claim under the ADEA are that "(i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's . . . age." Baloch, 550 F.3d at 1196. Notwithstanding any adverse employment action that the plaintiff might have suffered, nowhere in her complaint does the plaintiff state her age, nor does she provide facts connecting her age to her termination from Howard or to any other type of adverse employment action. The entirety of the plaintiff's age related allegations consist of a passing reference to an EEOC claim about which no facts are alleged, see Compl. ¶ 22, and the heading of her second cause of action, which merely states the name of the cause of action and "reallege[s] and incorporate[s]" the foregoing paragraphs of the complaint, id. ¶ 27. Because the plaintiff has alleged no facts from which this Court can infer the plaintiff's age, and because she has not alleged that her age was the reason for any adverse employment action taken against her by the defendants, the Court must dismiss her ADEA claim.

**C.      The Plaintiff's Invasion of Privacy Claim**

The plaintiff contends that "Dr. Duerinckx disclosed confidential information [about her] without consent of the plaintiff for commercial purposes and to harass and intentionally inflict emotional distress." Compl. ¶ 29. The defendants argue that the plaintiff has failed to state a claim for the common law tort of invasion of privacy because she has not alleged that the

information that Dr. Duerinckx disclosed about her was private, that the disclosure would be highly offensive to a reasonable person, or that there is a public interest in her likeness or name. Defs.' Mem. at 12-13. The plaintiff responds in her Motion for Cease and Desist Order Because of Harassment by restating the same facts found in her complaint. See Pl.'s Mot at 1 (alleging that Dr. Duerinckx disclosed "confidential employment information, information from [the plaintiff's] Curriculum vitae, and [the plaintiff's] photograph on the internet. . . . without [the plaintiff's] consent").

In the District of Columbia, courts have adopted the Second Restatement of Torts to "determin[e] the appropriate contours of a cause of action for" invasion of privacy. Vassiliades v. Garfinckel's, Brooks Bros., 492 A.2d 580, 587 (D.C. 1985). Thus,

> [i]nvasion of privacy is not one tort, but a complex of four, each with distinct elements and each describing a separate interest capable of being invaded. The four constituent torts are (1) intrusion upon one's solitude or seclusion; (2) public disclosure of private facts; (3) publicity that places one in a false light in the public eye; and (4) appropriating one's name or likeness for another's benefit.

Wolf v. Regardie, 553 A.2d 1213, 1216-17 (D.C. 1989) (citing Vassiliades, 492 A.2d at 587; Restatement (Second) of Torts § 652A (1977)). While the plaintiff's complaint does not identify a specific subset of the tort of invasion of privacy, the plaintiff's allegations are best suited to analysis under the categories of "public disclosure of private facts" or "appropriating one's name or likeness for another's benefit," and so the Court focuses on these two theories of liability.

To state an invasion of privacy claim based on the disclosure of private facts, a plaintiff must establish the following: "(1) publicity, (2) absent any waiver or privilege, (3) given to private facts (4) in which the public has no legitimate concern (5) and which would be highly offensive to a reasonable person of ordinary sensibilities." Wolf, 553 A.2d at 1220. And

13

"[f]ailure to establish any one of these elements will defeat a plaintiff's cause of action." Id. The Second Restatement of Torts clarifies further that

> [t]here is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public. Thus there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record, such as . . . the fact that he is admitted to the practice of medicine . . . .

Restatement (Second) of Torts § 652D, cmt. b. And "[i]t is only when the publicity given to [the plaintiff] is such that a reasonable person would feel justified in feeling seriously aggrieved by it, that the cause of action arises." Id., cmt. c.

Here, none of the information disclosed by Dr. Duerinckx constitutes "private facts." First, the complaint refers conclusorily to unidentified "confidential employment information." Compl. ¶¶ 23, 29. These bald allegations are insufficient to overcome a motion to dismiss. Iqbal, 556 U.S. at 679. Second, the complaint alleges the disclosure of "a photograph of [the] plaintiff" as well as her "professional achievements from her curriculum vitae." Compl. ¶ 23. Although "[p]ublication of a photograph of a nonpublic person without [her] consent is a violation of" a person's "'right of private personality and emotional security[,] . . . that right is not absolute." Vassiliades, 492 A.2d at 587. Given that the plaintiff is a medical doctor who was practicing in a university hospital, the disclosures here, absent additional allegations, seem to be of "information about the plaintiff that is already public." Restatement (Second) of Torts § 652D, cmt. b.

Neither is the information disclosed by Dr. Duerinckx the type of information "which would be highly offensive to a reasonable person of ordinary sensibilities." Wolf, 553 A.2d at 1220; see also Restatement (Second) of Torts § 652D, cmt. c. The circumstances under which courts have suggested that a defendant's disclosures would be "highly offensive" are of a different nature than the disclosures here. See, e.g., Randolph v. ING Life Ins. & Annuity Co.,

14

973 A.2d 702, 710 (D.C. 2009) ("[U]nauthorized viewing of personal information such as a plaintiff's Social Security number and other identifying information can constitute an intrusion that is highly offensive to any reasonable person . . . ."). Indeed, "'[a]nyone who is not a hermit must accept the more or less casual observation of his neighbors and the passing public as to what he is and does, and some reporting of his daily activities.'" Wolf, 553 A.2d at 1220 n.12 (citation omitted). Here, Dr. Duerinckx merely disclosed information about "what [the plaintiff] is and does," and the disclosure of such information cannot be said to be "highly offensive to a reasonable person of ordinary sensibilities." Id. at 1220. Accordingly, the Court must dismiss the plaintiff's disclosure of private facts claim.

With respect to the plaintiff's invasion of privacy claim based on the appropriation of her likeness or image, the plaintiff must show "a public interest or other value in her likeness" or name. Vassiliades, 492 A.2d at 592 (citing Restatement (Second) of Torts § 652C, cmts. a-b); see also Restatement (Second) of Torts § 652C, cmt. c. Even construed liberally, the complaint here includes only conclusory allegations concerning the public interest in or value to the defendant of the plaintiff's likeness and name, and the Court must therefore dismiss the plaintiff's claim of invasion of privacy by appropriation.

Finally, because the plaintiff has failed to state a cause of action for invasion of privacy under either the disclosure of private facts or appropriation of likeness theories, the Court must deny her motion for a cease and desist order, which the Court construes as a request for injunctive relief. See DynaLantic Corp. v. DOJ, 885 F. Supp. 2d 237, 249 (D.D.C. 2012) (citing Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 32 (2008)) ("[A]ctual success on the merits is a prerequisite to obtain permanent injunctive relief.").

**D.     The Plaintiff's Fraud and Misrepresentation Claims**

The defendants argue that the plaintiff has "failed to state a valid claim for fraud because she has not alleged any appreciable damages flowing from the alleged misrepresentation." Defs.' Mem. at 15.

To state a claim of fraudulent misrepresentation, a plaintiff must allege "'(1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken . . . in reliance upon the representation, (6) which consequently resulted in provable damages.'" Kumar v. Dist. of Columbia Water & Sewer Auth., 25 A.3d 9, 15 n.9 (D.C. 2011) (citation omitted) (alteration in original).

The plaintiff's allegations are insufficient to support her claims, because her complaint fails to allege that she sustained any damages resulting from the purported false representation. Accordingly, the Court must dismiss the plaintiff's fraud claim.

**E.     The Plaintiff's Intentional Infliction of Emotional Distress Claim**

"In order to establish a prima facie case of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendants, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." Williams v. District of Columbia, 9 A.3d 484, 493-94 (D.C. 2010) (internal quotation marks omitted). "Liability will not be imposed for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," Homan v. Goyal, 711 A.2d 812, 818 (D.C. 1998) (citation and quotation marks omitted), and "generally, employer-employee conflicts do not rise to the level of outrageous conduct," Duncan v. Children's Nat'l Med. Ctr., 702 A.2d 207, 211-12 (D.C. 1997).

As a basis for her claim of intentional infliction of emotional distress, the plaintiff here alleges that Dr. Duerinckx "introduce[d] negative credentialing data into her record to adversely

affect her future credentialing and employment." Compl. ¶ 32. She alleges also that he "continued to harass [her]" after she had left Howard. Id. ¶ 23. These allegations are insufficient. For example, in Crowley v. North American Telecommunications Ass'n, the plaintiff's supervisor "refused to meet with him or include him in board meetings, ignored is presence, and treated him in a hostile and unprofessional manner." 691 A.2d 1169, 1171 (D.C. 1997). The plaintiff was ultimately terminated after receiving a poor performance review. Id. The plaintiff further alleged that subsequent to being terminated, his supervisor defamed him. Id. The District of Columbia Court of Appeals found that "[s]uch circumstances are not the type for which liability may be imposed for" the tort of intentional infliction of emotional distress, id., because "[e]ssentially, [the plaintiff] allege[d] only that he was subjected to contempt, scorn and other indignities in the workplace by his supervisor and an unwarranted evaluation and discharge," id. at 1172. The court concluded that "[w]hile offensive and unfair, such conduct is not in itself of the type actionable on this tort theory." Id. As in Crowley, the plaintiff here has complained only of workplace indignities that, while purportedly tasteless and uncivil, do not amount to a cause of action for intentional infliction of emotional distress. The Court must therefore dismiss the plaintiff's claim.

### IV. CONCLUSION

For the foregoing reasons, the Court grants the defendants' motion to dismiss the plaintiff's complaint in all respects except insofar as the plaintiff has stated a cause of action for retaliation in violation of Title VII, and denies the plaintiff's motion for a cease and desist order.[3]

**SO ORDERED** this 30th day of September, 2013.

REGGIE B. WALTON<br>United States District Judge

---

[3] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.